**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**PATTI OKUNO,**

        **Plaintiff,**

                                     **Case No. 2:14-cv-662**

    **v.**                              **JUDGE GREGORY L. FROST**

                                     **Magistrate Judge Elizabeth P. Deavers**

**RELIANCE STANDARD
LIFE INSURANCE COMPANY,**

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) a motion for judgment on the administrative record (ECF No. 12) filed by Plaintiff, Patti Okuno ("Okuno") and a memorandum in opposition (ECF No. 15) filed by Defendant, Reliance Standard Life Insurance Company ("Reliance"); and

(2) a motion for judgment on the administrative record (ECF No. 13) filed by Reliance and  a memorandum in opposition (ECF No. 14) filed by Okuno.

For the reasons that follow, the Court **DENIES** Okuno's motion (ECF No. 12) and **GRANTS** Reliance's motion (ECF No. 13).

### I.  Background

Sometime prior to 2011, Okuno was diagnosed with fibromyalgia and cervical and lumbar spinal pain.  In June 2011, Okuno then began working for Limited Service Corporation ("Limited") as Art Director.  As a Limited employee, she was covered by a long term disability plan ("the Plan") issued by Reliance.  Reliance also serves as the claims review fiduciary for the Plan.

The Insuring Clause of this disability plan provides for payment of a monthly benefit if

an insured such as Okuno "(1) is Totally Disabled as the result of a Sickness or Injury covered

by this Policy; (2) is under the regular care of a Physician; (3) has completed the Elimination

Period; and (4) submits satisfactory proof of Total Disability to us," with "us" meaning Reliance.

(ECF No. 13-1, at Page ID # 90.)  Under the Plan definition, "Totally Disabled" means that an

injury or sickness has produced the following results:

> (1) during the Elimination period and for the first 12 months for which a Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation; ... and

> (2) after a Benefit has been paid for 12 months, an Insured cannot perform the material duties of any occupation.  Any occupation is one that the Insured's education, training or experience will reasonably allow.  We consider the Insured Totally Disabled if due to an Injury of Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

(*Id.* at Page ID # 81-82.)  The Plan also contains a number of limitations.

One such limitation is for mental or nervous disorders.  That provision provides in

relevant part:

> Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twelve (12) months unless the Insured is in a Hospital or Institution at the end of the twelve (12) month period.  The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits.

(*Id.* at Page ID # 94.)  The policy then defines "Mental or Nervous Disorders" as including

"disorders which are diagnosed to include a condition such as . . . depressive disorders; . . .

anxiety disorders; [and] . . . somatoform disorders (psychosomatic illness)."  (*Id.*)

Another limitation provision targets pre-existing conditions.  This provision provides:

Benefits will not be paid for a Total Disability:

> (1) caused by;

> (2) contributed to by; or
> (3) resulting from;

> a Pre-existing Condition unless the Insured has been Actively at Work for one (1) full day following the end of twelve (12) consecutive months from the date he/she became an Insured.

(*Id.*)  The policy also states that " 'Pre-existing Condition' means any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the twelve (12) months immediately prior to the Insured's effective date of insurance." (*Id.* at Page ID # 81.)

All of this language matters because Okuno applied for long-term disability benefits for in January 2012, and Reliance denied Okuno's claim.[1]  Reliance predicated its denial on the grounds that because Okuno's fibromyalgia and cervical and lumbar spinal pain constituted pre-existing conditions and contributed to her purported disability, the pre-existing condition policy exclusion applied.  In a May 18, 2012 letter to Okuno, Reliance cited the pre-existing limitation language of the policy and explained:

> Upon receipt of the requested medical records, your claim was referred to our medical department for review to help us determine your primary diagnoses, current restrictions and limitations, and whether any treatment during the pre-existing period was related to your current condition.

> Based on the review from our medical department, you were treated for your diagnosis of Fibromyalgia during the pre-existing period.  Medical records provided by Dr. J. David Pelfray [*sic*] note you were seen for treatment related to Fibromyalgia on February 7, 2011.  This is also the diagnosis for which you are currently filing a disability claim.

> Therefore, since you treated for the diagnosis of Fibromyalgia during the pre-existing period from July 13, 2010 to July 13, 2011, and that is also you[r] current disabling diagnosis, you are not eligible for benefit per the above stated policy provision and

---

[1] For ease of reference, the Court shall refer to Reliance as the only actor and dispense with reference to any subsidiary.

3

we must deny your claim.

(ECF No. 13-9, at Page ID # 262.)  Okuno appealed.

On appeal, Okuno asserted that she had not claimed that she was disabled due to fibromyalgia, but rather "due to a constellation of problems separate and distinct from fibromyalgia."  (ECF No. 13-14, at Page ID # 874.)  Specifically, Okuno cited as her disabling medical conditions Crohn's disease, narcolepsy, and fibromuscular dysplasia.  To support her appeal, Okuno submitted additional material, including medical records that she had not submitted as part of her original claim application.

During the appeal, Reliance requested and obtained additional medical records and referred Okuno's file for review by Dr. Lucien Parillo, an independent physician.  Reliance denied the appeal on the already discussed pre-existing condition grounds and on the grounds that the specific conditions for which Okuno sought disability benefits–Crohn's disease, narcolepsy, and fibromuscular dysplasia–were not considered disabling under the Plan terms.  In a November 16, 2012 letter to Okuno's counsel, Reliance first reviewed its pre-existing condition analysis in regard to the fibromyalgia and then addressed the other medical conditions as follows:

> In your appeal letter, you asserted that ms. Okuno's impairing conditions at her date of loss were not those she or Dr. Pelfrey listed in her claim application but rather Crohn's disease, narcolepsy, and fibromuscular dysplasia.  In order to appropriately address your arguments, we requested that Dr. Parrillo [*sic*] review the medical evidence in regards to these conditions and provide an opinion.

> In the report issued October 12, 2012, Dr. Parillo opined:

>> Based on my review of records, the conditions that the claimant's attorney alleges (Crohn's disease, Narcolepsy, and Fibromuscular Dysplasia) are not considered impairing conditions as of 01/23/2012.  There is no clinical documentation provided that substantiates that

4

claim that these conditions are physically impairing to the point of requiring restrictions, limitations, or absence from work.  She was under adequate treatment for her various conditions and there is no supportive evidence to verify that these conditions were causing functional impairment.

Based on Dr. Parillo's review, [Reliance] disagrees with your arguments that Ms. Okuno was rendered *Totally Disabled* on January 23, 2012 because of her Crohn's disease, Narcolepsy or Fibromuscular Dysplasia.  Medical records indicate that at her date of loss, Ms. Okuno not only alleged several other conditions as impairing but as Dr. Parillo points out, there is no clinical support that the conditions you allege rendered Ms. Okuno *Totally Disabled* at the date of loss.

(ECF No. 13-9, at Page ID # 273.)  Okuno appealed again.

In this second appeal, Okuno submitted additional medical information and asserted that she was disabled as a result of narcolepsy and Sjogren's syndrome, an autoimmune disorder. Reliance oddly failed to address the appeal due to an undisclosed "oversight" until the filing of a lawsuit prompted appellate consideration.  As before, Reliance sent the file for review by an independent consultant, this time Dr. Monroe Karetzky.  Karetzky opined that the medical records indicated that Okuno did not have fibromuscular dysplasia and that she was not impaired as a result of Crohn's disease.  Karetzky also questioned whether Okuno had been properly diagnosed with narcolepsy because she did not have any signs or symptoms of the condition independent of the drugs she took for other associated medical conditions.  Finally, Karetzky opined that Okuno was disabled due to cervical and lumbosacral spinal pain and fibromyalgia, in addition to severe depression and generalized anxiety disorders.

In an October 18, 2013 letter to Okuno's counsel, Reliance disposed of the second appeal.  Based on the Plan's Mental or Nervous Disorders language, Reliance reversed a portion of its prior denial and awarded Okuno benefits for 12 months, explaining that "[i]t has been determined that Ms. Okuno was disabled due to her depression and generalized anxiety

disorder." (ECF No. 13-9, at Page ID # 276.) Reliance again denied benefits for Crohn's disease, narcolepsy, and fibromuscular dysplasia, however, stating that "although it appears Ms. Okuno is in fact impaired, said impairments are due to her cervical and lumbar conditions, as well as fibromyalgia." (*Id.* at Page ID # 278.) Reliance also explained that even if these conditions were not pre-existing and outside the scope of the Plan's coverage, Karetzky had opined that Okuno could engage in sedentary work–and that Okuno's Art Director job qualified as a sedentary occupation. Okuno subsequently filed a third appeal.

In this last appeal, Okuno again submitted additional material in an attempt to rebut Karetzky's conclusions. Reliance had the medical records reviewed by a nurse, Mary Kay Walder, who concluded that Karetzky was correct that Okuno could have returned to work but for her depression and anxiety issues. Reliance also had a background check conducted on Okuno, which revealed that she was serving as a registered agent for Chizucko Design LLC during the period in which she claimed she was disabled.[2]

In a June 12, 2014 letter to Okuno's counsel, Reliance upheld its decision to terminate benefits. Reliance summarized the prior series of decisions and appeals, stated that its additional review had confirmed the earlier conclusions, and explained:

> Therefore, we have determined that the October 18, 2013 determination, identifying the presence of a psychiatric clinical component since the January 23, 2012 date of loss, was appropriate. As Ms. Okuno's records continue to support the continued presence of a psychiatric component, we have determined that the decision to pay benefits to Ms. Okuno under the Mental or Nervous Disorders provision from February 22, 2012 through February 23, 2013 was also appropriate. As the Policy prohibits payment for a Mental or Nervous Disorder beyond the Maximum Duration of Benefits period of 12 months, and Ms. Okuno received payment for 12 full months, we have determined that the decision to terminate benefits was also, [*sic*]

---

[2] The Court includes this fact for the sake of completeness but considers it immaterial to the disposition of this litigation.

appropriate.

(ECF No. 13-9, at Page ID # 292.)  Several weeks after receiving this last denial letter, Okuno

filed the instant lawsuit.  The parties have filed motions for judgment on the administrative

record, which are ripe for disposition.  (ECF Nos. 12, 13.)

## II.  Discussion

### A.  Standard Involved

Okuno asserts a claim under 29 U.S.C. § 1132(a)(1)(B), which "gives a participant the

right to bring a civil action 'to recover benefits due to him under the terms of [her] plan, to

enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under

the terms of the plan.' " *Creech v. Unum Life Ins. Co. of N. Am.*, No. 05-5074, 2006 WL 41186,

at *2 (6th Cir. Jan. 9, 2006).  It is well settled that "a denial of benefits challenged under §

1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan."  *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419

F.3d 501, 505-06 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

115 (1989).  *See also Calvert v. Firstar Finance. Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005).  If

the Plan provides the administrator with discretion, then "the highly deferential arbitrary and

capricious standard of review is appropriate."  *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*,

138 F.3d 1062, 1066 (6th Cir. 1998).  *See also Calvert*, 409 F.3d at 291-92.

Both parties agree that the arbitrary and capricious standard applies in the instant case.

The Sixth Circuit has explained that, in determining whether this standard applies, a court should

remain cognizant that a plan is not required to use certain magic words to create discretionary

authority for a plan administrator in administering the Plan.  *Johnson v. Eaton Corp*., 970 F.2d 1569, 1572 at n.2 (6th Cir. 1992).  What is required is "a clear grant of discretion [to the administrator]."  *Wulf v. Quantum Chemical Corp*., 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994).

The Plan involved here provides that Reliance "shall serve as the claims review fiduciary" and that it "has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits."  (ECF No. 13-1, at Page ID # 86.)  In light of this language, this Court therefore agrees with the parties that the arbitrary and capricious standard applies.

This standard "does not require [the Court] merely to rubber stamp the administrator's decision."  *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).  Rather, under the arbitrary and capricious standard, a plan administrator's decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome."  *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (noting that "the arbitrary and capricious standard is the least demanding form of judicial review").  In other words, the Court will uphold a benefit determination if it is "rational in light of the plan's provisions."  *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).  *See also Calvert*, 409 F.3d at 292.

In evaluating the record, then, the Court is required to consider only the facts known to the plan administrator at the time the final decision was made to deny benefits.  *Moon v. Unum Provident Corp*., 405 F.3d 373, 378 (6th Cir. 2005); *see also Miller v. Metropolitan Life Ins. Co.*,

925 F.2d 979, 986 (6th Cir. 1991).  The Court is also required to remain cognizant of the potential inherent conflict of interest that arises given that Reliance acts as both the decision maker on a claim and the potential payor of that claim.  *Calvert*, 409 F.3d at 292.

### B. Analysis

Not at issue in this litigation are that Okuno's fibromyalgia and her spinal conditions are pre-existing conditions that fall outside the scope of the plan.  Also not at issue is that Okuno was sufficiently disabled for at least the limited 12 months of benefits that she received (although the parties dispute the existence and effect of the depression and general anxiety that entitled her to the limited benefits).  The parties' core dispute instead involves whether Reliance acted reasonably in declining to pay long-term disability benefits for Okuno's Crohn's disease, narcolepsy, and Sjogren's syndrome.[3]

Okuno argues that Reliance used the wrong standard for its analysis, deciding whether she was able to perform the essential functions of *her occupation* as opposed to *any occupation*, the standard for total disability under the plan.  She asserts that this led her into submitting medical and vocational evidence targeting her own occupation as opposed to any occupation.  Okuno also asserts Reliance acted arbitrarily and capriciously in multiple ways, including its reliance on the opinions of Karetzky.  She protests that because the doctor opined on matters far outside his area of expertise, Reliance could not have reasonably relied on his opinions.  Similarly, Okuno contends that Reliance unreasonably relied upon the opinions of Parillo

---

[3] This list of ailments omits fibromuscular dysplasia.  Okuno explains in her briefing that, "[e]arly on, [her] physicians considered fibromuscular dysplasia as a potential diagnosis, so there is some discussion of that condition in the administrative record.  Ultimately, however, Okuno's physicians rejected that diagnosis."  (ECF No. 14, at Page ID # 1153.)

because he lacked the appropriate training and experience to opine on the issues he did. Additionally, Okuno argues that Parillo's opinions of are ultimately of little value because he did not have the benefit of subsequently submitted medical evidence before him when he formed his opinions.

Reliance argues that none of Okuno's medical records and none of her doctor's opinions establish why any of her diagnoses, whether alone or together, disable her from any occupation. This is the applicable standard; as noted, the plan provides that total disability exists when "an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow." (ECF No. 13-1, at Page ID # 81-82.)

This Court agrees with Okuno that Reliance appeared to most often, if not always, decide whether Okuno was unable to perform the essential functions of her own occupation throughout the claim appeals process. But the Court disagrees with Okuno that this means that Reliance did not come to the correct ultimate conclusion regarding her entitlement to total disability benefits. Okuno's specific sedentary occupation is a subset of "any occupation." If, as it did, Reliance concluded that Okuno could perform her occupation, then it of course recognized that she could perform a job fitting within the plan definition of "any occupation," which means that Reliance implicitly determined that Okuno did not meet the plan definition of "totally disabled" so as to entitle her to the benefits she seeks.

Moreover, given the plan definition of "totally disabled," any election by Okuno to submit medical or vocational evidence limited to her own occupation was a self-inflicted wound. Reliance could only examine what it had before it, and if for whatever reason Okuno decided to

10

ignore the plan definition, she is left with the result of her decision.  It would subvert the process to say that Reliance misled Okuno into pursuing her benefits claim less than optimally.  Okuno's burden remained and remains the same regardless of the language that Reliance used in its communications.

To support its argument on the merits, Reliance asserts that Okuno's doctors did not explain the basis for their concluding that she was disabled.  Reliance also rejects Okuno's characterization of much of the record evidence.  Some of this is largely trivial, such as the disagreement over whether the opinion of Okuno's surgeon, Gewirtz, definitively ruled out any relationship between Okuno's purportedly disabling conditions and her cervical issues.  Gewirtz stated in a February 22, 2012 letter that Okuno "is now complaining of a bunch of bizarre symptoms" and that he does "not have anything to offer her surgically.  These bizarre complaints I really cannot make sense of.  Some of it may be from her Sjogren's.  Some of it may be from neurofibromatosis.  I would recommend referral to a neurologist for an evaluation."  (ECF No. 13-11, at Page ID # 594.)  In such instances, the parties' disagreement is one of degree–whether Gewirtz "flatly ruled out" a connection between disc issues and the disabling conditions or whether he expressed an opinion short of that absolute conclusion.  The debate is essentially immaterial; the takeaway is that such opinions offer only limited support for either parties' position.  There is no smoking gun ignored by Reliance.

Equally unhelpful to today's task is the parties' dispute over whether Reliance was *required* to evaluate independently Okuno's physical conditions in light of the fact that one or more mental or nervous disorders contributed to her disability.  Reliance separately evaluated Okuno's physical complaints.

11

Moreover, the Plan provides for benefits for total disability "caused by or contributed to by mental or nervous disorders," which means that if Okuno's mental or nervous disorders were *part* of the disabling circumstances at any time, the limitation provision properly applied.  *See Guo v. Reliance Standard Life Ins. Co.*, No. 08-11027, 2009 WL 2386084, at *8 (E.D. Mich. July 30, 2009) ("The ordinary meaning of 'contributed to by' does not require or even suggest that what contributes to the disability also be the initial cause.").  Application of this limitations provision means that if Okuno's total disability resulted in part from a mental or nervous disorder, Reliance's determination that benefits were limited was not arbitrary and capricious. *See id.*  The Sixth Circuit has in fact upheld a denial of additional benefits in a similar context. *See Eastin v. Reliance Standard Life Ins. Co.*, No. 13-6247, 2014 WL 3397141, at *2, 3 (6th Cir. July 10, 2014) ("Because the medical records support Reliance's determination that depression contributed to Eastin's total disability and the plain language of the plan provided for a lifetime maximum benefit of twenty-four months when a mental disorder contributed to a disability, Eastin is not entitled to any additional benefits.").

Three comments are necessary.  First, it is notable that this Court cannot find anywhere in the record where Okuno argued during her claim process that, if they existed, her depression and general anxiety disorders were not disabling.  Her making such a contention now is suspect, especially in light of the fact that at least two of her doctors recognized in their records these conditions.  In a December 29, 2013 letter responding to Karetzky's report, Pelfrey opined that "Depression and Anxiety have been DISABLING diagnoses for [Okuno] over the past two years" and that "it is wrong to conclude that only Depression has been a DISABLING diagnosis for [Okuno] over the past two years."  (ECF No. 13-15, at Page ID # 1106-07.)  Similarly, in a

May 1, 2013 evaluation of Okuno, neurologist Jones indicated that emotional factors contribute to the severity of Okuno's symptoms and functional limitations.  (ECF No. 13-15, at Page ID # 1071.)  Such opinions invoke application of the Plan's mental and nervous disorders limitation.

Second, Pelfrey's recognition of diagnoses of depression and anxiety and conclusion that at least depression has been a contributing component of Okuno's disability undercuts her contention that "[t]he evidence in this case is overwhelming that Okuno is disabled by physical illness alone."  (ECF No. 14, at Page ID # 1157.)  Okuno may be correct that Jones opined on her behalf that what was attributable to depression and anxiety were more accurately attributable to narcolepsy and cataplexy because symptoms are often mistaken.  But another of Okuno's doctors, Pelfrey, clearly credits these mental or nervous disorders as existing and contributing to her overall state.  The record indicates that Pelfrey saw Okuno twice in April 2012 for "ongoing depression [and] anxiety."  (ECF No. 13-15, at Page ID # 1042.)  Subsequent to these appointments, Pelfrey does not take the position in his December 29, 2013 letter that Karetzky was wrong in diagnosing Okuno with depression and general anxiety.  Rather, Pelfrey's point in the letter is that the depression is not the only condition that has been disabling for Okuno.  This is significant for two reasons, one of which is applicable at this juncture: Okuno's own doctor agreed that she has a mental or nervous disorder that contributes to her disability.

Third, it appears that Okuno is asserting that Reliance cannot invoke the mental and nervous disorders provision now because it did not advance this argument as a reason for denying Okuno's claim during the administrative review process.  If this is indeed Okuno's position, her contention does not match the record.  For example, the record includes a June 12, 2014 letter from Reliance in which Reliance invokes the limitations provision:

> [W]e have determined that the October 18, 2013 determination, identifying the presence of a psychiatric component since the January 23, 2012 date of loss, was appropriate.  As Ms. Okuno's records continue to support the continued presence of a psychiatric component, we have determined that the decision to pay benefits to Ms. Okuno under the Mental or Nervous Disorders provision from February 22, 2012 through February 23, 2013 was also appropriate.  As the Policy prohibits payment for a Mental or Nervous Disorder beyond the Maximum Duration of Benefits period of 12 months, and Ms. Okuno received payment for 12 full months, we have determined that the decision to terminate benefits was also, [*sic*] appropriate.

(ECF No. 13-9, at Page ID # 292.)  Although Reliance could have specifically referenced the "contributed to by" language of the provision or drawn the connection in greater detail, the relevant point is implicit in the invocation of the limitation.  Identifying the provision and noting the psychiatric component connects the dots sufficiently to preserve the argument for this litigation.

The remaining question is whether Okuno's physical issues presented total disability.  These conditions are Crohn's disease, narcolepsy, fibromuscular dysplasia, and Sjogren's syndrome.  The mere diagnosis of any of these conditions alone is insufficient to render Okuno disabled within the meaning of the Plan.  This is because, as the Sixth Circuit has explained,

> "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." [*Toyota Motor Mfg., Ky., Inc. v. Williams*, 122 S.Ct. 681, 691 (2002)].  An individualized case-by-case assessment of the effect of that impairment on the plaintiff's life is required, including the extent of its limitation on a major life activity and the effect of any corrective or mitigating measures taken by the plaintiff.  *Id.* at 691-92 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483-84, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)); *see also Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (disability not based on the diagnosis, but on the effect of that impairment on the life of the individual).

*Cartwright v. Lockheed Martin Utility Servs., Inc.*, 40 F. App'x 147, 153 (6th Cir. 2002).  What is required, then, is examination of whether Okuno produced record evidence of the effect of those impairments on her life to qualify for long-term benefits.

14

Reliance asserts that it did not act arbitrarily and capriciously in concluding that Okuno did not produce such record evidence.  This Court agrees.  The Sixth Circuit has upheld a denial of benefits where two doctors wrote letters indicating that a claimant suffered from a condition that "precluded even the lightest work, [but] neither doctor quantified the [claimant's] functional limitations in terms of the number of hours she could sit or stand comfortably, or the like." *Wages v. Sandler O'Neill & Partners, L.P.*, 37 F. App'x 108, 113 (6th Cir. 2002).  This holding matters because although the record contains conclusory statements of disability by Okuno's doctors, what is lacking is a substantive analytic chain linking her conditions to that conclusion premised on specific evidence.

There is not, for example, an articulation of how any of the various conditions that may afflict Okuno impose limitations that would render her "totally disabled" *within the meaning of the policy*.  Instead, Okuno presents a benefits claim and a record based on inference.  There are conclusions by her doctors that she is disabled and even limitations expressed.  There is no analysis indicating, however, that when the doctors are talking about disabling conditions they mean the actual plan definition of "totally disabled" or that they mean to explain how the conditions inform the Plan's definition of "any occupation."  *See Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Empls.*, 741 F.3d 686, 701 (6th Cir. 2014) (explaining that "a decision on a disability benefits claim requires 'an application of the relevant evidence to the occupational standard' because 'medical data, without reasoning, cannot produce a logical judgment about a claimant's work ability' " (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 618 (6th Cir. 2006))).

In contrast, Reliance points to specific record evidence to support its consultants'

15

conclusions that Okuno was not totally disabled.  Such action is permissible.  The Sixth Circuit has "upheld a denial of benefits where independent consultants reviewed the medical records and determined that the claimant was not disabled within the meaning of the policy." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 302 (6th Cir. 2009).  The court of appeals has also held that a "denial of benefits was not arbitrary and capricious when, although the treating physician believed the claimant was 'totally disabled,' other medical evidence indicated that the claimant could perform sedentary work." *Id.*  This is important because the file reviews at issue here produced opinions that Okuno could do sedentary work.

Although an independent medical examination might have been more reassuring, especially in regard to the mental or nervous disorders determinations, the Court is cognizant that there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 296 (6th Cir. 2005).  It is the sufficiency of such a review that matters.  Here, the file reviews conducted include the review of Karetzky, who opined that Okuno was disabled due to cervical and lumbosacral spinal pain and fibromyalgia and, notably, severe depression and generalized anxiety disorders.  This latter conclusion is important because it is the contextual depth or sufficiency of the file review that matters, and Karetzky's file review resulted in Reliance crediting its reviewer's opinion, reversing part of its prior denial of benefits, and awarding 12 months of benefits.

Okuno devotes considerable time in her briefing to argue that Karetzky is not competent, derisively dismissing him as "a geriatric pulmonologist."  (ECF No. 12, at page ID # 30.)  But other file reviewers reached similar conclusions throughout the claim process.  Earlier in the

16

claims process, Parillo opined (after reviewing less than all the records that were eventually submitted) that there was no clinical documentation substantiating that Okuno's conditions were physically impairing to the point of requiring restrictions, limitations, or absence from work and no supportive evidence verifying that the conditions ever caused functional impairment. Subsequent to Karetzky in the appeals process (and after all of the evidence had been submitted), Walder agreed with the same core conclusions.

But what is perhaps more significant is the second point arising from Pelfrey's December 29, 2013 letter: regardless of the credentials or lack thereof of Reliance's consultants, Okuno own doctor stated that she has depression and anxiety and that at least one of these mental or nervous disorders have been disabling for her. Okuno cannot rely on Pelfrey's opinions when they support her claim and then ignore him when his conclusions mirror in whole or in part the conclusions of Reliance's consultants. Thus, even if this Court were to accept Okuno's arguments that some of the file reviewers exceeded their expertise, her own doctor reached the same conclusions on key points that counter her benefits claim. Other doctors, such as Jones with his often compelling analysis, may disagree, but the end result is the same. There was record evidence, some of it even submitted by Okuno, that reasonably argued against an entitlement to benefits.

All of this leads to the conclusion that Reliance has acted within its rights, even if its benefits decision is not necessarily one at which others would have arrived. There is no doubt that Okuno has unfortunately experienced numerous conditions that present serious difficulties. But the law does not require Reliance or this Court to accept this misfortune as totally disabling. Rather, the law permits Reliance to rely on the opinions of its consultants (and Okuno's own

17

doctors) in evaluating Okuno's claim for benefits, even where those opinions might disagree with other medical professionals.  And the law lets Reliance enforce its plan limitations and definitions.  The Sixth Circuit has explained:

> Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*McDonald v. W. S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).  Here, Okuno has not established that she satisfied the requisite conditions to obtain disability benefits beyond what Reliance has already paid.  Reliance's denial of continued long-term disability benefits appears to have been the result of a principled and deliberative reasoning process.  The fact that Reliance has an inherent conflict of interest does not undermine this conclusion.  That significant fact is but one factor for consideration by this Court, and it does not carry dispositive weight here in light of the totality of the record before this Court.  *See Kouns v. Hartford Life & Acc. Ins. Co.*, 780 F. Supp.2d 578, 585 (N.D. Ohio 2011).  Accordingly, Reliance is entitled to judgment on the administrative record.

### III.  Conclusion

This Court **DENIES** Okuno's motion (ECF No. 12) and **GRANTS** Reliance's motion (ECF No. 13).  The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

_____/s/ Gregory L. Frost_____
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**